VAIMAONA FOLOI, ARIETA VAIMAONA, LAGIMA VAIMAONA, and TAU FUIAVA, Plaintiffs

v.

FA'AMAMAFA TUITASI, Defendant

High Court of American Samoa
Trial Division

LT No. 18-88

December 12, 1989

Before REES, Associate Justice, OLO, Associate Judge, and VAIVAO, Associate Judge.

Counsel: For Plaintiffs, Togiola T.A. Tulafono
For Defendant, Charles V. Ala'ilima

On Motion for New Trial:

We held that a warranty deed signed by plaintiff Vaimaona Foloi conveying land to defendant Fa'amamafa Tuitasi was valid and that the land in question now belongs to the defendant. 12 A.S.R.2d 68 (1989), Plaintiffs allege fourteen grounds of error in our decision.

One of these grounds may have merit. Our finding that "on August 6, 1987, defendant Tuitasi had offered the deed for registration as her individually owned land," while technically an accurate statement of the record, may have been misleading.

It appears that defendant (and/or plaintiff Vaimaona) filed a copy of the warranty deed with the Territorial Registrar on August 6. *See* Plaintiffs' Exhibit 2. The record reflects that the Registrar treated this filing as a request (1) for approval of the sale by the Land Commission and (2) for registration of the land as individually-owned land of defendant Tuitasi. *See id.* A notice was posted the same day at the Court House and at two places in Lauli'i, stating that any objections could be filed with the Secretary of the Land Commission on or before September 8, 1987. No objections were filed. The sale was approved by the Land Commission on September 28 and by the Governor on October 2.

On October 20 the Territorial Registrar issued a "Certificate of Registration." It certified that "Warranty Deed, Portion of Land 'Mulipa' in the Village of Lauli'i" had been offered for registration by Mrs. Tuitasi "as her individually-owned land" and had been "duly registered."

The Registrar's certificate implies that the registration in question was *both* a registration of the deed as an "instrument . . . effectual to pass title" under A.S.C.A. § 37.0210 *and* a registration of the land described therein as the individually-owned land of defendant Tuitasi in accordance with A.S.C.A. §§ 37.0101 et seq. Although the statutes in question do not prohibit the registration "of the deed" and "of the land" from being initiated by a single application, the two processes are technically distinct.

Chapter 1 of Title 37 of the American Samoa Code Annotated (A.S.C.A. §§ 37.0101 et seq.) deals with "Titles to Land." This chapter provides, *inter alia*, that the owner of any land not previously registered may register his title with the Territorial Registrar. A.S.C.A. § 37.0101(a). The application for registration of title is done in accordance with the procedures set forth in A.S.C.A. §§ 37.0102-03, whose purpose is to give notice to anyone who might wish to file an objection to the application. Provided that no such objections are filed, the Registrar records a title which is good against the world. A.S.C.A. § 37.0103(c); *see Ifopo v. Siatuʻu*, 12 A.S.R.2d 24 (1989). A procedurally valid registration in accordance with A.S.C.A. §§ 37.0101 et seq. precludes subsequent judicial inquiry into the validity of the record owner's title; the statutory scheme gives "anyone who wishes to object on any ground whatever to the registrant's claim of ownership" a sixty-day period within which to do so, and provides that in the absence of such objection, "the land is registered in the name of the claimant and all other claims of ownership are forever precluded." *Ifopo, supra*, at 26.

The immediately succeeding chapter, A.S.C.A. §§ 37.0201 et seq., deals with "Alienation of Land." It provides a number of substantive restrictions on alienation and also sets forth procedures for the lawful alienation of land. The latter, including a requirement that any proposed alienation of communal land be submitted to a Land Commission and to the Governor for approval or rejection, are designed to ensure that land will not be alienated lightly even in the absence of a specific substantive restriction. The final step in the procedure for alienation of land is set forth in A.S.C.A. § 37.0210, providing that "[n]o instrument shall be effectual to pass the title to any land . . . until such instrument has been duly registered with the territorial registrar." When a buyer and seller comply with the provisions of A.S.C.A. §§ 37.0201 et seq., including the recordation provision of A.S.C.A. § 37.0210, the buyer becomes the owner of whatever interest the seller had in the land.

The distinction between registration "of the land" and "of the deed" is best characterized as a distinction between substance and procedure. The protection afforded a landowner by compliance with A.S.C.A. §§ 37.0101 et seq. is essentially a form of estoppel: having been duly notified to come forward within sixty days, rival claimants are thereafter precluded from attacking the validity of the record owner's title. The protection afforded by compliance with A.S.C.A. §§ 37.0201 et seq. is substantive: although rival claimants remain procedurally free to object to the record owner's title, anyone who acquires land in

79

conformity with the substantive and procedural provisions of this chapter (and who acquires the land from someone who really was the owner) thereby becomes the lawful owner of the land. Thus a party who claims to own land, even though he may not have registered the land in accordance with the procedural requirements of A.S.C.A. §§ 37.0101 et seq. and therefore cannot take advantage of the preclusive effect of that chapter, will nevertheless prevail *on the merits* provided that he bought the land from its lawful owner in compliance with A.S.C.A. § 37.0210 and the other statutes governing the validity of land transfers.

It would be to the advantage of a party who purchases land that has never previously been registered to apply for registration in accordance with both the "Titles" chapter and the "Alienation" chapter. The Certificate of Title issued by the Registrar suggests that defendant's application was so construed. It does not appear from the evidence before us, however, whether the process of registration met all the statutory requisites for registration of land under A.S.C.A. §§ 37.0101 et seq. Specifically, although it does appear that a notice was posted telling interested persons that they had a right to object to the warranty deed, the last date specified for such objections was September 8. This was twenty-eight days sooner than the end of the sixty-day period specified by A.S.C.A. § 37.0103 for objections to land registrations.

It may be that the Registrar was relying on the sixty-day notice that had been posted pursuant to Vaimaona's offer of registration in 1978 --- which, together with the subsequent warranty deed from Vaimaona to Tuitasi, would arguably bar any objections to Tuitasi's title --- or it may be that a separate notice was posted pursuant to A.S.C.A. § 37.0103 but not introduced into evidence in the present case. Although a number of documents pertaining to registration of the land were introduced by both parties, neither party called the Registrar to testify about whether the documents in evidence constituted his office's entire file on the land, as is the usual practice in land registration cases. The record does reflect that the Registrar waited until October 20, which was more than sixty days after the application and posting of notices, before registering defendant's title.

Contrary to another of plaintiffs' assertions of error, the Registrar's certificate of title is presumed to be valid and a party asserting its procedural irregularity has the burden of presenting "compelling proof." *Ifopo v. Siatu'u, supra,* at 28 (1989). "[T]hat a document should be missing from a file in the Registrar's Office" --- much less from what may have been only the partial contents of such a

file --- "is so common as to be an extremely unreliable indicator of whether an event that might have been attested by the document did or did not occur." *Id.* at 28. Nevertheless, if our holding that defendant Tuitasi is the owner of the land rested squarely on the preclusive effect of plaintiffs' failure to file objections within the sixty days prescribed by A.S.C.A. §§ 37.0103, we would be inclined to grant a new trial for the limited purpose of calling the Territorial Registrar to testify about the process by which Mrs. Tuitasi's title was registered.

Such an exercise would be pointless, however, for plaintiffs cannot prevail on the merits even if A.S.C.A. § 37.0103 does not preclude them from attacking defendant's title. This is because the record clearly shows that the land was validly purchased in accordance with all the provisions of A.S.C.A. §§ 37.0201 et seq. Defendant acquired the land from Vaimaona, who as sa'o of the family was the person vested by law with power to dispose of it within the statutory restrictions and procedures for alienation of communal land.

Plaintiffs' assertion that A.S.C.A. § 37.0204 "specifically prohibits the alienation of communal lands" is simply wrong. On the contrary, the section prohibits such alienation only "without the written approval of the Governor" and "to any person who has less than one-half native blood." This section is living proof that the Fono knows how to restrict the power of a sa'o when it wants to. The custom that major decisions should be made in consultation with the whole family (a custom unfortunately honored perhaps as often in the breach as in the observance) is not among those the Fono has seen fit to incorporate into the statutory restrictions on the otherwise plenary powers of a sa'o over family lands. Vaimaona is therefore unable to avoid his contract on the ground of his own violation of this custom, and the other plaintiffs' remedies are against Vaimaona and not the purchaser. When she "received her deed from the grantor and registered it . . . . title to the property described in her instrument passed to her and the grantor lost all of his interest therein." *Moon v. Falemalama*, 4 A.S.R. 836, 839 (1975).[1]

Plaintiffs' other objections are without merit. Our finding that Vaimaona signed the deed is supported not only by the weight of the evidence but also by plaintiffs' own judicial admission: paragraphs 5 and

---

[1] The quoted passage cites former 27 A.S.C. § 601(a), the section providing for registration of instruments which was renumbered as A.S.C.A. § 37.0210 when the present Code was adopted.

6 of the complaint state that he executed the document in question but that he did not understand what it was. Plaintiff Vaimaona had every opportunity prior to trial to examine the deed for possible forgeries; he even appended it to his complaint as Exhibit A. His discovery that he did not sign the document after all seems to have been a last-minute inspiration.

Similarly, Vaimaona's testimony that he always thought he was just giving permission to renovate a house and not conveying land was contradicted not only by the defendant but also by the two Land Commission members who testified at trial. Although their recollections differed in some respects, both members specifically recalled explaining to Vaimaona the legal effects of his proposed action.

Plaintiffs also urge for the first time that notice of the deed and/or land registration should have been posted in Aumi, not Lauli'i. Aumi is usually regarded as a subdivision of the village of Lauli'i. In any case, plaintiffs did not raise this issue in their pleadings or at trial; indeed, paragraph 4 of their complaint alleges that the disputed land is located "in Aumi, Laulii, American Samoa."

Plaintiffs further suggest that the registration was invalid because the file contains no notarized affidavit of posting. This objection is moot insofar as our holding does not rest on the preclusive effect of A.S.C.A. § 37.0103. In any case, this section does not require that posting be evidenced by an affidavit or any other particular form of evidence; see *Ifopo, supra*. (A.S.C.A. § 37.0210, the statute providing for registration of *instruments* as opposed to title itself, not only requires no affidavit but does not specify posting or any other particular form of notice prior to registration. In this case, however, the record shows that at least 52 days' notice was given of the Land Commission hearing on the deed transferring title. Indeed, it is hard to see how plaintiffs can complain that they received no notice when plaintiff Vaimaona himself was there and testified.)

Finally, plaintiffs note that the certificate of posting says that notice was posted at "the Administration Building" rather than "the Court House." Again, this matters only insofar as our holding rests on the preclusive effect of A.S.C.A. § 37.0103; it has no bearing on whether defendant validly purchased the land. We take judicial notice, however, that the language in question tracks the language of A.S.C.A. § 37.0103 prior to its amendment in 1979, and that for some years now the Registrar has posted notices not at the Administration Building but at the.

Court House (which is itself the former Administration Building). Although the Registrar's office should certainly have gotten around to changing its form by now, we decline to accept this as a basis for the invalidation of every land title registered since 1979.

Accordingly, the motions are denied.

It is so ordered.